IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DEWAYNE MELVIN BRYANT,

    Plaintiff,

v.                                              CASE NO. 1:13-cv-85-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

_____/

**O R D E R**[1]

    Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the Commissioner") denying Plaintiff's application for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act (the Act).  (Doc. 1.)   The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  (Docs. 11, 18, 19.)   For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

    Plaintiff applied for SSI on May 27, 2009, alleging disability beginning November 15, 2007, due to "pain from broken back, diabetes, [and] bipolar schizophrenia." (R. 165.)  Plaintiff was 31 years old at the time of his alleged onset of disability, had a high school education, and past work as a day laborer, moving van helper, muffler

---

[1] The parties have consented to have the undersigned, a U.S. Magistrate Judge, conduct all proceedings in this case.  (Docs. 6, 8.)

technician, grocery store clerk and automobile mechanic. (R. 173, 310-11). Plaintiff's application was denied initially and upon reconsideration. An administrative hearing was held before an Administrative Law Judge ("ALJ") on October 18, 2011. (R. 26-58.) On October 28, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled. (R. 11-22.) The Appeals Council denied Plaintiff's request for review on March 11, 2013. (R. 1-5.) Plaintiff then filed this appeal on May 6, 2013. (Doc. 1.)

Plaintiff raises four issues for review: (1) Whether the ALJ made a proper assessment of Plaintiff's credibility and afforded appropriate weight to the various medical sources in making mental and physical RFC determinations; (2) Whether the ALJ properly assessed Plaintiff's mental health impairments, including the combined effect of such impairments; (3) Whether the ALJ properly assessed Plaintiff's spinal impairment; and (4) Whether the ALJ properly considered the effect of Plaintiff's obesity in combination with his spinal impairment. (Doc. 1.)  The Court concludes that the ALJ did not err in explaining the weight afforded to the medical sources regarding Plaintiff's mental health impairments, and did not err in formulating the RFC regarding such mental health impairments. The Court concludes, however, that the ALJ erred in failing to explain the weight afforded to the medical sources in assessing Plaintiff's spinal impairment, and such error requires reversal.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more

---

[2] *See* 42 U.S.C. § 405(g) (2000).

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous

---

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant

---

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so

---

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.  Medical Records

#### 1. Physical Impairments

On December 13, 2008, Plaintiff had a consultative physical examination with Eftim Adhami, M.D.  Plaintiff complained of pain and numbness in the left hand, sciatic nerve pain in the left leg, and hip pain.  Dr. Adhami noted that plaintiff did not have any lumbar paravertebral muscle spasms, had no abnormal movements, and had 5/5 muscle strength in all muscles.  Plaintiff's walk was normal and he was able to pick up small objects and button clothes.  His back had a full range of motion with mild pain and some stiffness.  His straight leg-raising test was normal.  Dr. Adhami noted that Plaintiff should have a left hip x-ray and assessed mild arthritis of his lower back.  Other diagnoses included history of bipolar disorder, diabetes, mild psoriasis, and micro vascular artery disease in his feet due to smoking, diabetes, and/or hyperlipidemia.  (R.

---

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

283-88).

Medical records from examinations in July and August 2009 reflect that Plaintiff was working as a mechanic, had no acute complaints, had no edema, intact sensation, 5/5 strength, normal gait, and good range of movement. Plaintiff reported smoking one to two packs of cigarettes a day for 15-20 years.   (R. 296-98, 408).

On August 21, 2009, Plaintiff reported back pain, but he was pleasant and in no acute distress. Plaintiff was tender to palpation and had a positive straight leg test on the left, but his strength was preserved and his reflexes were symmetrical. Dr. Kendall Campbell assessed a history of back pain and directed Plaintiff to continue taking his pain medication. (R. 308.)

In January and February 2010, Plaintiff reported that he had recently started walking about 1-1.5 miles, though pain made walking hard. Plaintiff reported that he continued smoking. His diabetes was uncontrolled. Plaintiff was prescribed medication and counseled to stop smoking and lose weight. (R. 416-19).

Plaintiff complained of back pain at an April 2010 follow-up examination with Dr. Arulselvam. Plaintiff's primary complaints were headache and sore throat. Plaintiff had no edema and limited range of motion of the spine. (R. 410-11).

In May 2010, Plaintiff presented with complaints of back pain, sore throat, sinusitis, and hoarseness. Plaintiff reported a back injury in 1994, but no diagnostic studies were available. Plaintiff had a limited range of motion, but sensation was intact. Dr. Arulselvam ordered lumbar and thoracic spine MRIs and prescribed physical therapy and pain medication. Plaintiff was counseled to reduce weight and exercise.

(R. 406).

On May 5, 2010, Olga M. Garcia, M.D., a state agency physician, completed a physical residual functional capacity assessment. Dr. Garcia determined that Plaintiff's diagnoses were diabetes, hypertension, lumbar back pain, and obesity. Dr. Garcia opined that Plaintiff remained able to perform light work that did not require climbing ladders/ropes/scaffolds. (R. 332-39).

Plaintiff underwent an MRI of the lumbar spine on May 14, 2010. Plaintiff saw Maximillian Shokat, D.O., at the UF Orthopedics Clinic in August 2010 for low back pain. Plaintiff reported a football injury in high school that required hospitalization and physical therapy. Plaintiff's MRI showed degenerative disease at L3-4, 4-5, and L5-S1 with a disk extrusion at L4-5 at the left paracentral and foraminal location, with significant narrowing at L4-5 on the left and mild disk height loss at L5-S1. Plaintiff had decreased range of motion to approximately 30 degrees with poor segmental motion and approximately 10 degrees of lumbar extension with pain. He had 15 degrees of side-bending rotation bilaterally, and tenderness to palpation at the L5-S1 junction and bilateral paspinal muschles. Plaintiff had 5/5 muscle strength bilaterally in the lower extremities and intact sensation. He had an antalgic gait pattern favoring the right side. Dr. Shokat's impression was "chronic intermittent mostly axial low back pain related to degenerative disk disease and joint disease most pronounced at L4-5 and L5-S1." Dr. Shokat recommended physical therapy focused on strengthening, lumbar traction, and weight loss. Plaintiff was continued on flexeril and ibuprofen. Dr. Shokat opined that Plaintiff was not a good surgical candidate since the majority of his pain was low back

versus radicular.  (R. 365-67).

At an October 2010 followup, Plaintiff complained of pain and worsening of symptoms.  He reported pain at the level of 9/10 at the examination.  Plaintiff also reported that the pain worsened with bending, lifting, and sitting.  He had intermittent numbness.  Pain was relieved with rest and medication.

Plaintiff had decreased range of motion in the lumbar spine with hamstring tightness.  He had about 60 degrees of lumbar flexion, 5-10 degrees of lumbar extension, and 10 degrees side-bending rotation bilaterally.  He had tenderness to palpation at the left L4-5, L5-S1 paraspinal muscles and some at the SI joint.  Plaintiff had 5/5 muscle strength in bilateral extremities and normal sensation.  However, he had 2/4 deep tendon reflexes at the knee and 0/4 at the ankle bilaterally.  Plaintiff presented an antalgic gait pattern favoring his left side.  He had radicular symptoms with straight leg raise.  Dr. Shokat's impression was "chronic low back pain with lumbar degenerative disk disease and spondylosis, most severe at L4-L5 and L5-S1, with some symptoms of possible left L4 radiculitis."  Plaintiff's medication was increased, and he was scheduled for a lumbar epidural steroid injection, and was instructed to continue a home exercise program.  (R. 360-61).

## 2. Mental Impairments

On October 23, 2009, Plaintiff underwent a consultative psychological examination with William E. Beaty, Ph.D.  Plaintiff reported previous convictions for a controlled substance offense, grand theft/burglary, and driving infractions.  He reported

a history of heavy drinking and cocaine use, which he stopped in 2007. He reported mental problems dating to middle school, including problems controlling anger which led to fighting. Plaintiff's mood was depressed and anxious and his affect was constricted and flat. His speech was normal, his thought processes were intact, and he had no delusions or paranoia. He had no impairment in attention or memory, based on being able to count backward 20-1 by 1's quickly, recite the alphabet, and count backward from 100 by 3's accurately. He gave a detailed history full of facts and information, and recalled 3/3 words after five minutes. Plaintiff was responsive verbally. His cognitive ability was average.

With regard to Plaintiff's ability to do work-related tasks, Plaintiff's understanding of directions, instructions, and conversations was adequate, but it was hard for him to remember sequences of things, appointments, and names of people. His concentration was poor, and his task persistence was low, and he "has to come back and finish things he has started all the time." (R. 310-13).

On November 19, 2009, Steven Wise, Psy.D., a state agency psychologist, completed a psychiatric review technique and mental residual functional capacity assessment. Dr. Wise concluded that Plaintiff was "moderately limited" in three of eight mental activity areas under "sustained concentration and persistence"; "moderately limited" in his ability to interact appropriately with the general public; and "moderately limited" in his ability to set realistic goals or make plans independently of others. Dr. Wise assessed no other limitations in mental activities. Dr. Wise opined that these moderate limitations restrict Plaintiff to "simpler tasks" due to decreased sustained

concentration, and that he is a "poor choice to greet the general public." (R. 328-30).

On May 14, 2010, Martha Putney, Ph.D., a second state agency psychologist, completed a psychiatric review technique and mental residual functional capacity assessment. Dr. Putney concluded that Plaintiff was "moderately limited" in only two mental activity areas: the ability to get along with coworkers or peers, and the ability to respond appropriately to changes in the work setting. Dr. Putney identified no significant limitations in sustained concentration and persistence. Dr. Putney opined that the identified limitations imposed no significant work restrictions and that Plaintiff was "able to understand and remember moderately detailed work procedures an dinstructions, be cooperative and appropriate, adapt to a work setting requiring limited interpersonal responsibility, make work decisions, and perform moderately complex tasks shen clean and sober and as his physical limitations permit." (R. 354-56).

**B.    Hearing Testimony**

At his administrative hearing, Plaintiff testified that he weighed 320 pounds and had gained weight due to his medications. Plaintiff lives alone in an RV on his father's property, has a dog, and is able to cook, clean, bathe, and dress himself. He has a driver's license and drives himself to doctor's appointments, though he has a friend take him shopping in case he has back problems. He spends some time with friends but generally tries to stay by himself.

Plaintiff testified that he is unable to work due to uncontrolled diabetes, severe migraine headaches, and back problems. Plaintiff has been referred to a pain

management clinic but has been unable to go because he is uninsured. He has difficulty sleeping. In addition to back pain, Plaintiff has pain in his feet and ankles due to diabetic neuropathy, and his fingers tingle and feel numb, making it difficult to grab things. He has one to three migraine headaches a week. Plaintiff testified that he could sit for two to three hours, stand/walk two hours, and lift/carry three to five pounds, but would be unable to bend to pick something up.

With regard to mental health problems, Plaintiff testified that he suffers from bipolar disorder, schizophrenia, and narcissistic rage. His depression has worsened due to being unable to work. He stopped treatment because he did not like his doctors, but had made an appointment to resume counseling. He has difficulty concentrating, and his medication causes fatigue.

David Burnhill, a vocational expert, testified at the hearing that an individual with Plaintiff's RFC could perform the following occupations at the light exertional level that existed in significant numbers in the regional and national economies: Night Cleaner, Sorting, and Bagger - Hand Packing. (R. 28-58.)

**C.     Findings of the ALJ**

The ALJ found that the Plaintiff had the following severe impairments: major depressive disorder, post-traumatic stress disorder, intermittent explosive behavior, schizoaffective disorder in remission, antisocial personality disorder, Type II diabetes, high blood pressure, alcohol and cocaine abuse in remission, obesity, and low back pain. The ALJ found that Plaintiff's severe impairments did not meet or equal the listings. At step three, the ALJ found that Plaintiff had mild restrictions in activities of

daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation of extended duration. The ALJ determined that Plaintiff's RFC was as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could lift/carry up to 20 pounds occasionally, 10 pounds frequently, stand/walk for about six hours, and sit for up to six hours in an eight hour workday, with normal breaks. He would be limited to no climbing ladders/ropes/scaffolds. In addition, the claimant would need work that would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work related decisions, and routine work place changes. He would also need work that is isolated from the public with only occasional supervision and only occasional interaction with co-workers.

(R. 11-22.)

The ALJ found that Plaintiff could not perform his past relevant work. The ALJ found, relying on the testimony of the VE, that there were jobs that existed in substantial numbers in the national economy that Plaintiff could perform, as set forth above. The ALJ noted that Plaintiff's attorney asked the VE whether a person who would have an absentee rate of 20% would be able to maintain employment in unskilled jobs, and the VE testified that he would not. The ALJ found, however, that there was no evidence in the medical records that Plaintiff would be absent from work 20% of the time. (R. 21). Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. DISCUSSION

### A. Weight Given to Medical Opinions in Formulating the RFC

#### 1. Mental Health

Plaintiff contends that the opinions of Drs. Wise and Putney are entitled to little

weight as they are non-examining physicians. He contends that although the ALJ adopted the opinions of Dr. Beaty and Dr. Wise regarding Plaintiff's poor concentration, and suggested in questioning the VE that Plaintiff would be "off task" 20% of the time, the ALJ erroneously rejected the VE's opinion that such an individual would have no jobs available. Doc. 18 at 5-6.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23] The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

claimant's impairments.[25]

With regard to medical opinions of consultative physicians, "the ALJ [is] required to state with particularity the weight he gave the different medical opinions and the reasons therefor."[26] Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[27] the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.[28] Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[29]

With respect to Plaintiff's mental impairments, the ALJ specifically stated that he afforded "great weight" to the opinions of Dr. Beaty and Dr. Wise because those opinions were supported by examination findings and were consistent with the evidence of record. The ALJ afforded "little weight" to Dr. Putney's opinion, which expressed fewer limitations than those assessed by Dr. Beaty and Dr. Wise, because Dr. Putney's opinion was inconsistent with the medical evidence of record. Accordingly, the Court finds that the ALJ did not err in his duty to explain the weight afforded each opinion and the reasons therefore.

---

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[26] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[27] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[28] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[29] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

Moreover, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments resulted in only moderate limitations, and the ALJ accounted for such limitations in the hypothetical posed to the VE.  Generally, when posing a hypothetical to a VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments included in the RFC.[30]  The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must set out all of the claimant's impairments.[31]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[32]

If an ALJ determines a claimant has moderate difficulties in concentration, persistence or pace, then the ALJ's hypothetical to a VE must account for those difficulties.[33]  The ALJ need not include, however, such limitations explicitly in the hypothetical.[34]  Instead, "limiting the hypothetical to include only unskilled work

---

[30] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[31] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

[32] Wright v. Comm'r of Soc. Sec., 327 F. App'x 135, 137 (11th Cir. 2009).

[33] Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011.)

[34] Id. at 1180.

sufficiently accounts for such limitations" in concentration, persistence or pace when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work" despite those limitations.[35] Hypotheticals also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise explicitly account for these limitations."[36]

The Court concludes first that the ALJ's RFC determination properly accounted for the ALJ's findings that Plaintiff was moderately limited in concentration, persistence, and pace and moderately limited in social functioning. A mental activity is "moderately limited" when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired. A "marked" limitation means that the individual cannot usefully perform or sustain the activity.[37] As the ALJ explained, the medical evidence supports a conclusion that Plaintiff's impairments were no more than moderate because Dr. Beaty's examination reflected intact thought processes, no attention or memory impairment, average cognitive ability, and adequate ability to understand directions. Dr. Beaty's assessment that Plaintiff had poor concentration and low task persistence appears to derive largely from Plaintiff's comments during the examination, and not to Dr. Beaty's assessment. *See* R. 313.

The RFC appropriately accounted for these limitations by including the non-

---

[35] Id.

[36] Id.

[37] *See* Social Security Program Operation Manual System (POMS) DI 24510.63, http://policy.ssa.gov/poms.nsf/lnx/0424510063 (Last accessed September 25, 2014).

*Case No. 1:13-cv-85-GRJ*

exertional limitations that Plaintiff was limited to "simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work related decisions, and routine work place changes.  He would also need work that is isolated from the public with only occasional supervision and only occasional interaction with co-workers." (R. 15).   Each of these findings described above (as well as additional limitations) was included in the hypothetical to the VE. (R. 53-54).  The VE opined that with those restrictions an individual could perform the following occupations in the regional and national economies: Night Cleaner/Hotel Housekeeper, Sorting, and Bagger-Hand Packing.   (R. 55).

Plaintiff contends that the ALJ disregarded the VE's response to a second hypothetical that posited an individual who would be "off task" for 20% of the time. (R. 56).  Plaintiff contends that the second hypothetical was "more accurate."  However, the record does not reflect evidence that would support a conclusion that Plaintiff would be "off task" for 20% of the workday, and the ALJ is not required to accept a VE's response to a hypothetical that includes limitations that are not supported in the record.

### 2. Physical Impairments

With respect to Plaintiff's physical impairments, the ALJ's decision is silent with respect to the weight afforded to the medical evidence provided by Plaintiff's treating physicians versus the examining and non-examining consultants.  In explaining the basis for the RFC and the basis for his conclusion that Plaintiff's allegations regarding the limiting effects of his impairments were not fully credible, the ALJ merely referenced Dr. Adhami's December 2008 findings that Plaintiff had "full range of motion in his back

with mild pain reported and some stiffness." The ALJ also referenced Dr. Garcia's non-examining opinion in May 2010 – which predated Plaintiff's MRI and subsequent treatment by Dr. Shokat – in concluding that Plaintiff could perform at the light exertional level with the exception of climbing ladders/ropes/scaffolds. *See* R. 19. But Dr. Adhami's findings are at odds with Dr. Shokat's findings, which document decreased range of motion, decreased deep tendon reflexes, and lumbar degenerative disk disease and spondylosis, with some symptoms of possible left L4 radiculitis. *See* R. 360-61. Dr. Shokat's findings were based on diagnostic testing that was not available to Dr. Garcia when she opined that Plaintiff could perform work at the light exertional level except for climbing activities. Dr. Shokat's findings document that Plaintiff experienced increased pain upon bending, lifting, and sitting. Dr. Shokat's findings also arguably support Plaintiff's subjective claims of greater limitations due to pain and decreased range of motion, but the ALJ does not explain how Dr. Shokat's findings would factor into his credibility assessment. *See* R. 19.

The Commissioner contends that the evidence of record, including Dr. Shokat's findings, supports the ALJ's RFC. The ALJ's findings, however, implicitly reject Dr. Shokat's medical evidence. The ALJ's failure to either weigh the evidence or explain its significance requires reversal for further proceedings. Because the issue of Plaintiff's physical RFC will be revisited upon remand, it is unnecessary to address Plaintiff's remaining argument regarding the ALJ's consideration of Plaintiff's obesity in combination with his other impairments.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Order.  The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**DONE AND ORDERED** this 25th day of September 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge
United States Magistrate Judge